IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHAHKENE JOSEPH,<br><br>                    Petitioner,<br><br>        vs.<br><br>D. ROCK, Superintendent, Upstate Correctional Facility,<br><br>                    Respondent. | No. 9:11-cv-00536-JKS<br><br>MEMORANDUM DECISION |

       Shahkene Joseph, a New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Joseph is currently in the custody of the New York State Department of Corrections and Community Supervision and is incarcerated at Upstate Correctional Facility. Respondent has answered, and Joseph has not replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

       On March 13, 2006, Joseph was charged with two counts of Murder in the Second Degree pursuant to New York Penal Law §§ 125.25(1) (intentional murder) and 125.25(2) (depraved indifference murder). The charges stemmed from a June 2001 incident in which Joseph and Lamarr Reid, in a botched burglary attempt, fired shots through the closed door of an apartment, one of which struck and mortally wounded the victim.

       The charges against Joseph and Reid were severed, and Joseph proceeded to jury trial. Upon conclusion of trial, a jury found Joseph not guilty of intentional murder but convicted him of depraved indifference murder. Reid was convicted of intentional murder in his trial.

Through counsel, Joseph appealed his conviction, arguing that: 1) the prosecution failed to establish legally sufficient evidence to sustain his conviction for depraved indifference murder; 2) the verdict was against the weight of the evidence because the evidence established that Joseph engaged in a "quintessentially intentional homicide" and was insufficient to show that Joseph engaged in conduct evincing a depraved indifference for human life; 3) the trial court erred in submitting both the intentional murder and depraved indifference murder instructions to the jury; 4) the prosecutor committed misconduct; and 5) his trial counsel was ineffective for failing to raise in his motion to dismiss and motion to set aside the verdict specific grounds for the dismissal of the depraved indifference murder count. In support of his argument that the offense was intentional, Joseph stated that the evidence showed:

> [Joseph] and Reid intended to perpetrate a robbery of a marijuana selling operation at 298 Second Street. As they approached the building, [the victim] was observed crouching behind a partially opened door preparing to shoot a dog outside the building with a BB gun. Upon seeing [Joseph] and Reid approaching, [the victim] slammed the door shut.
> According to the prosecution, once [the victim] slammed the door shut, [Joseph's] and Reid's intention changed and they began shooting at the door. In fact, in an effort to emphasize the intentional nature of [Joseph's] and Reid's actions, the prosecution stressed that all of the shots were fired into the lower portion of the building's front door. This is precisely the area where [the victim] was observed crouching before the door was slammed shut. Under these circumstances, [Joseph's] conduct can hardly be characterized as reckless.

On December 31, 2009, the Appellate Division affirmed Joseph's conviction in a reasoned opinion. It concluded that the trial court did not err in submitting both intentional murder and depraved indifference murder for the jury's consideration and, the conviction was supported by legally sufficient evidence and not against the weight of the evidence. The appellate court further rejected Joseph's prosecutorial misconduct and ineffective assistance of counsel claims.

Joseph then applied to the Court of Appeals for leave to appeal the Appellate Division's decision, arguing again that the evidence demonstrated the intentional nature of the crime. Joseph further asserted that recent New York cases differentiating between intentional murder and depraved intentional murder had led to inconsistencies in the lower courts' treatment of the issue and urged the court to use Joseph's case to provide further clarification on the matter. The Court of Appeals summarily denied the request on May 13, 2010.

Thereafter, Joseph timely filed a Petition for a Writ of Habeas Corpus to this Court on May 9, 2011.

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Joseph purports to assert three grounds for habeas relief. He first argues that the trial court erred in submitting both intentional murder and depraved indifference murder for the jury's consideration when all evidence "clearly pointed towards an intentional murder." He similarly argues that evidence of intentional homicide was used to obtain and sustain his depraved indifference murder conviction in violation of his due process rights. These arguments boil down to a single claim, which the Court will refer to as claim 1, that the trial court erred in submitting both counts for the jury's consideration. Joseph additionally argues that his depraved indifference murder conviction was not supported by legally sufficient evidence.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

3

Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

A.     Exhaustion

Respondent contends that Joseph has failed to exhaust his claim that his conviction for depraved indifference murder was not supported by legally sufficient evidence. Although Joseph raised this claim on direct appeal to the Appellate Division, he did not address this claim directly in his application to the Court of Appeals for leave to appeal.

This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). To be deemed exhausted, a claim must have been presented to the highest state court that may consider the issue presented. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In New York, to invoke one complete round of the State's established appellate process, a criminal defendant must first appeal his or her conviction to the Appellate Division and then seek further review by applying to the Court of Appeals for leave to appeal. *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005).

"[W]hen a 'petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted." *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (citation omitted); *see also Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir. 1991). A habeas petitioner may only avoid dismissal of his procedurally defaulted claims if he can demonstrate "cause for the default and prejudice from the asserted error," *House v. Bell*, 547 U.S. 518, 536 (2006), or a "fundamental miscarriage of justice," *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986),

*superceded by statute on other grounds*, *United States v. Gonzalez-Largo*, No. 2:07-cr-0014, 2012 WL 3245522, at *2 (D. Nev. Aug. 7, 2012). A miscarriage of justice is satisfied by a showing of actual innocence. *See Schlup v. Delo*, 513 U.S. 298, 326-27 (1995). Joseph does not claim that cause exists for his procedural default, nor does he assert actual innocence. Because Joseph may not now return to state court to exhaust these claims, the claims may be deemed exhausted but procedurally defaulted from habeas review. *See Ramirez v. Att'y Gen.*, 280 F.3d 87, 94 (2d Cir. 2001).

This Court nonetheless may deny his claim on the merits and with prejudice. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). This is particularly true where the grounds raised are meritless. *See Rhines v. Weber*, 544 U.S. 269, 277 (2005). Accordingly, this Court declines to dismiss the claim solely on exhaustion grounds and will instead reach the merits of the claims as discussed below.

B.  Merits

    1.  Submission for the Jury's Consideration of both Intentional Murder and Depraved Indifference Murder (Claim 1)

In addressing this claim on direct appeal of his conviction, the Appellate Division concluded:

> To be sure, the circumstances in which both charges may be considered are narrow. However, while there is no question that firing through the door where the victim stood a moment before created a grave danger that the victim would be injured or killed, . . . the circumstances here presented a close question of fact for the jury regarding [Joseph's] state of mind at the moment he fired his weapon. It is clear that under the circumstances, if no intent to kill the victim was formed, [Joseph's] conduct reflected wickedness, evil or inhumanity, as manifested by brutal, heinous and despicable acts and his conduct was so wanton, so deficient in a moral sense of concern, so devoid of regard

6

of the life or lives of others, and so blameworthy as to render [Joseph] as culpable as one whose conscious objective is to kill.

Under New York law, where an indictment contains two inconsistent counts, the court must submit at least one thereof. N.Y. CRIM. PROC. LAW § 300.40(5). "If a verdict of guilty upon either would be supported by legally sufficient trial evidence, the court may submit both counts in the alternative . . . ." *Id*. Two counts are inconsistent "when guilt of the offense charged in one necessarily negates guilt of the offense charged in the other." *Id*. at § 300.30(5). "[I]t has never been permissible in New York for a jury to convict a defendant of depraved indifference murder 'where the evidence produced at trial indicated that if the defendant committed the homicide at all, he committed it with the conscious objective of killing the victim.'" *Policano v. Herbert*, 507 F.3d 111, 114-15 (2d Cir. 2007) (quoting *Policano v. Herbert*, 859 N.E.2d 484, 493 (N.Y. 2006)). Whether the trial court erred in submitting both intentional murder and depraved indifference murder to the jury therefore depends on the resolution of claim 2, as discussed below.

2. Sufficiency of the Evidence Supporting the Depraved Indifference Murder Conviction (Claim 2)

The Appellate Division summarized the following evidence in rejecting Joseph's claim on direct appeal:

> In his written statement to police, [Joseph] admitted that he had only intended to rob the apartment—which was a known location for selling [marijuana]. [Joseph's] statement indicated that Reid kicked open the front door and he and Reid saw the victim standing in the doorway before he victim pushed the door closed. Although the victim happened to have a pellet gun, there was no evidence that either [Joseph] or Reid saw it. The eyewitness inside the apartment testified that the victim had just started to open the door when he cried out in surprise and closed the door before the shots were fired. The victim was struck by a round from Reid's weapon and spread shot from [Joseph's] shotgun; he bled to death. The eyewitness testified that shortly before the shooting, [Joseph] had visited the apartment to buy [marijuana], but was otherwise unknown to

7

him. There was no evidence that [Joseph] knew the victim or had any premeditated intention to injure or kill the victim.

The appellate court ultimately concluded, "A rational jury could therefore find that [Joseph], acting without a conscious objective to kill, but with a wanton disregard for a grave risk of death, shot blindly through the door, resulting in the victim's death."

The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crimes with which he is charged. *See Fiore v. White*, 531 U.S. 225, 228-29 (2001); *Jackson v. Virginia*, 443 U.S. 307, 315 (1979). This inquiry "does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis in original). A habeas petitioner claiming that there was insufficient evidence supporting the conviction is entitled to relief under 28 U.S.C. § 2254 only if it is found "that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 324; *see also Schlup*, 513 U.S. at 323 n.38. The reviewing court is required to consider the evidence in the light most favorable to the prosecution, and draw all inferences in its favor. *Jackson*, 443 U.S. at 319.

"When considering the sufficiency of the evidence of a state conviction, '[a] federal court must look to state law to determine the elements of the crime.'" *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) (quoting *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999)). Joseph's conviction was legally insufficient only if no rational trier of fact could have found him guilty of all of the elements of depraved indifference murder under the Court of Appeals's interpretation of the statute when his conviction became final in August 2010—90 days after the

8

Court of Appeals denied his application for leave to appeal. *See Flowers v. Fisher*, 296 F. App'x 208, 210 (2d Cir. 2008) (whether a conviction is supported by legally sufficient evidence is assessed according to the state law at the time conviction becomes final); *Fernandez v. Artuz*, 402 F.3d 111, 112 (2d Cir. 2005) (in New York, a defendant's conviction becomes final 90 days after the Court of Appeals denies his application for leave to appeal).

Under New York law, a person is guilty of depraved indifference murder if, "under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person." N.Y. PENAL LAW § 125.25(2). New York law further provides that:

> A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.

N.Y. PENAL LAW § 15.05(3).

Considering Joseph's conduct and the surrounding circumstances, this Court cannot conclude that the evidence was indicative only of intentional conduct and not of depraved reckless conduct. *See Rivera v. Cuomo*, 664 F.3d 20, 21-22 (2d Cir. 2011) (after giving the state courts and the jury "the utmost deference," rejecting the argument that evidence was so lacking that no rational jury could have found petitioner guilty of depraved indifference murder); *Mannix v. Phillips*, 619 F.3d 187, 201 (2d Cir. 2010) (where the petitioner "knowingly and deliberately fired a pistol though a door into a small, enclosed space containing the victim and a bystander," court on habeas review found that evidence was sufficient to sustain depraved indifference murder conviction because "the evidence was easily sufficient for a jury to conclude that [the

9

petitioner] fired the shots into the ladies' room recklessly and not accidentally"); *Baptiste v. Ercole*, 766 F. Supp. 2d 339, 358-59 (N.D.N.Y. 2011).

As the Appellate Division held on its direct review of this case, "the evidence presented is more consistent with the conclusion that no conscious objective to harm anyone was present, and that [Joseph] fired at the door in callous frustration, spite or surprise in response to the door being closed in his face, yet with utter disregard for the victim or, indeed, anyone else that might have been behind that closed door." In support of that conclusion, the appellate court noted that there was no evidence that Joseph had known the victim or had any premeditated intention to injure or kill the victim, and, after the shootings, Joseph fled immediately without robbing the apartment. As the appellate court noted, these facts "evinc[e] a complete lack of concern over whether [his] shots hit anyone."

In his application seeking leave to appeal to the Court of Appeals, Joseph suggests that changes in the New York Court of Appeals's jurisprudence prior to his appeal may have created some ambiguity as to the distinction between intentional murder and depraved indifference murder. Between 2002 and 2006, New York's interpretation of the statutory requirements of depraved indifference murder changed. Prior to 2002, the New York State Court of Appeals had held that this offense required a reckless state of mind and that its element "under circumstances evincing a depraved indifference to human life" referred to an objectively determined degree-of-risk standard. *See People v. Register*, 60 N.Y.2d 270, 279 (N.Y. 1983); *People v. Sanchez*, 98 N.Y.2d 373, 380 (N.Y. 2002). Through a series of cases, the New York Court of Appeals gradually narrowed the recklessness culpability in *Register* and *Sanchez*. *See People v. Hafeez*, 100 N.Y.2d 253, 258-59 (N.Y. 2003); *People v. Gonzalez*, 807 N.E.2d 273, 275-76

10

(N.Y. 2004); *People v. Payne*, 819 N.E.2d 634, 637 (N.Y. 2004); *People v. Suarez*, 844 N.E.2d 721, 729-31 (N.Y. 2005).

In 2006, the Court of Appeals explicitly overturned its previous interpretation, holding that "under circumstances evincing a depraved indifference to human life" required a subjective state of mind of depraved recklessness. *People v. Feingold*, 852 N.E.2d 1163 (N.Y. 2006); *see also Mannix*, 619 F.3d at 197-98 (describing New York's changed depraved indifference law). The post-*Feingold* interpretation of "depraved indifference" prevents convictions in cases where the defendant intended to cause a particular person's death because those intentional acts do not demonstrate an "indifference" towards that individual's life. *See, e.g., Petronio v. Walsh*, 736 F. Supp. 2d 640, 650 (E.D.N.Y. 2010) (interpreting state law) (after *Feingold*, "'indifference' is now best understood as a dispassion towards the fate of the victim—'a willingness to act . . . because one simply doesn't care whether grievous harm results or not'" (citations omitted)).

Although courts have held that defendants may benefit from changes in the law that occur before their convictions become final, *see Fernandez v. Smith*, 558 F. Supp. 2d 480, 498-502 (S.D.N.Y. 2008), this fact does not help Joseph because *Feingold* was decided on July 5, 2006—before Joseph proceeded to trial on October 23, 2007. Thus, *Feingold* was controlling law throughout his trial, conviction, and appeal. Moreover, because, as discussed above, the evidence does not compel the conclusion that Joseph's acts could not be committed with a depraved recklessness state of mind, Joseph cannot establish that his conviction conflicts with *Feingold* and its progeny.

Joseph therefore cannot prevail on his claim that the evidence was legally insufficient to support his depraved indifference murder conviction. And because the evidence supported the

11

depraved indifference murder conviction, his claim that the trial court erred in submitting for the jury's consideration both intentional murder and depraved indifference murder necessarily must fail as well.

V. CONCLUSION

Joseph is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: March 31, 2014.

                                                 /s/ James K. Singleton, Jr.
                                                 JAMES K. SINGLETON, JR.
                                                 Senior United States District Judge